**RISS & CO., Inc. v. UNITED STATES et al.**

Nos. 4806, 4974.

United States District Court
W. D. Missouri, W. D.

Sept. 27, 1951.

Gage, Hillix & Phelps, John B. Gage, John Kreamer, Kansas City, Mo., Posner, Berge, Fox & Arent, A. Alvis Layne, Jr., Wendell Berge, Washington, D. C., John S. Marley, Kansas City, Mo., for plaintiff Riss & Co.

Allen Crenshaw, Asst. Chief Counsel, I. C. C., Washington, D. C., Daniel W. Knowlton, Chief Counsel, Washington, D. C., of counsel, for defendant Interstate Commerce Commission.

William J. Hickey, Sp. Asst. to the Atty. Gen., Herbert A. Bergson, Asst. Atty. Gen., James E. Kilday, John F. Baecher, Sp. Assts. to Atty. Gen., Sam M. Wear, U. S. Atty. David A. Thompson, Asst. U. S. Atty., Kansas City, Mo., for defendant United States.

John R. Norris, James J. Doherty, Baldwin, Jarman & Norris, Baltimore, Md., Lowell L. Knipmeyer, Kansas City, Mo., for intervenors, Interstate Commerce Carrier Council of Maryland, Joint North-eastern Motor Carrier Ass'n Inc., and Continental Transportation Lines.

Carl L. Steiner, Axelrod, Goodman & Steiner, Chicago, Ill., for intervenor Spector Motor Service Inc.

Before JOHNSEN, Circuit Judge, REEVES, Chief Judge, and DUNCAN, District Judge.

DUNCAN, District Judge.

Riss and Company, a corporation, organized under the laws of the State of Colorado, with its principal place of business in North Kansas City, Missouri, filed these suits to set aside certain orders of the Interstate Commerce Commission, alleging the denial to it of the right to serve certain routes, intermediate and off-route points which it claims the right to serve under the "grandfather clause" of the Motor Carrier Act of 1935, § 206(a) of the Interstate Commerce Commission Act, 49 U.S.C.A. § 306(a), and upon 49 U.S.C.A. § 305(g), and 28 U.S.C. §§ 1398, 2321–2325.

The complaint alleges among other things that the orders of the Commission and the proceedings are unlawful and invalid insofar as they deny operating authority claimed by the plaintiff in its applications, because the Commission failed to consider relevant evidence, and on the grounds that the orders are not supported by substantial evidence, and are arbitrary and capricious.

Plaintiff's alleged rights are based upon its application to continue service which it contends had been rendered by it prior to the critical date under the Act (June 1, 1935), and under the rights derived by it through the purchase of the Illmo Trucking Service, Inc., and the Monark Motor Freight System, Inc.

In Case No. 4974 plaintiff, Riss & Company, seeks to enjoin the orders of the Commission made with respect to its rights as an original operator and as derived through the purchase of the Illmo Trucking Service, Inc., and in Case No. 4806 plaintiff seeks to set aside the orders with respect to the denial of the rights to serve certain routes and route segments, and intermediate and off-route points on such routes and route segments, which plaintiff

claims were denied to it in violation of its grandfather rights. The cases were consolidated for the purposes of hearing.

The original application filed by the plaintiff as such was known as "Docket No. MC–200" and when Riss & Company acquired the rights of the Illmo Trucking Service, Inc., which was pending before the Commission at that time, the two applications were assigned Docket No. MC–200 (Sub. No. 7). After filing application MC–200 plaintiff filed numerous other applications and they were assigned numbers subsequent to 200. It is in this proceeding that plaintiff seeks to enjoin the actions of the Commission in Case No. 4974.

Upon the acquisition of the Monark Motor Freight System, Inc., it was assigned Docket No. MC–200 (Sub. No. 46) and it is in this case number that plaintiff seeks to enjoin the Commission in Case No. 4806.

### Facts Respecting Riss & Co., and Illmo Trucking Service, Inc., Applications— MC–200 (Sub. No. 7).

On November 23, 1935 Riss & Co., filed grandfather application MC–200 in which it sought authority to transport as a common carrier by motor vehicle, general commodities between points over 45 regular routes in the 18 states of Colorado, Utah, Oklahoma, Wyoming, Texas, Nebraska, Missouri, Iowa, Indiana, Kansas, Illinois, Michigan, Ohio, Pennsylvania, New York, Maryland, New Jersey, and West Virginia. Pursuant to the filing of this application, hearings were held in November and December 1936 and January 1937 before an examiner of the Commission, and finally, on January 29, 1940 Division 5 of the Commission found Riss & Co., entitled to transport under grandfather rights as a common carrier by motor vehicle: "(a) of general commodities, except livestock between points in Colorado, Illinois, Kansas, Missouri, Oklahoma and Texas, over 16 regular routes, serving certain intermediate and off-route points, and (b) of specified commodities from Chicago, Ill., and Kansas City, Mo., or points on the general-commodity routes west thereof, to certain

points in Indiana, Illinois, Maryland, New Jersey, Ohio, and Pennsylvania, over 5 regular routes." The application in all other respects was denied, effective March 20, 1940.

On December 30, 1941 a certificate was issued to Riss & Co. Thereafter, Riss & Co., filed petition for reconsideration of MC–200 only insofar as it was denied the right to serve the intermediate point of St. Louis without restriction. On May 18, 1945 Division 5 reopened the proceedings for further hearing in regard to serving St. Louis, and vacated and set aside the order entered on January 29, 1940 insofar as it denied Riss & Co., the right to service St. Louis without restriction. No petitions were filed by any party for reconsideration of this order.

The Illmo Trucking Service, Inc., a Missouri corporation, on February 12, 1936 filed its application under the grandfather clause with the Commission for certificate of public convenience and necessity for the carriage of general commodities over routes and to points in Missouri, Illinois and Iowa. On October 3, 1939 Riss & Co. sought the approval of the Commission to purchase the rights to which the Illmo Trucking Service, Inc., might be entitled under the statute. Thereafter proceedings on the Illmo application were designated as MC–200 (Sub. No. 7) and are the subject of plaintiff's complaint in Case No. 4974 in this court.

Hearings were held by a Joint Board on October 5, 1940 and on November 10, 1940 the Joint Board issued a recommended order and report, which was adopted on November 12, 1940 by Division 5 of the Commission.

On December 30, 1941 Division 5 issued a certificate of public convenience and necessity to plaintiffs, purporting to cover the operating authority to which the applicant was found to be entitled in MC–200 and MC–200 (Sub. No. 7) with the elimination of any duplications with other rights granted to plaintiff in that order, or by previous orders. This order covered the Riss and Illmo applications. The order did not grant all of the requested routes contained in plaintiff's applications, but no

exceptions or petition for reconsideration were filed to this order, and it became final.

On May 9, 1946 Riss & Co., requested leave to file petition for reconsideration of MC-200 (Sub. No. 7) and others, which will be discussed later. On July 23, 1946 the Commission granted leave to file the petition for reconsideration, and the petition was filed on October 11, 1946. The petition requested reconsideration of all the denials in all of the orders of the Commission relative to all the applications filed by Riss, Illmo and Monark from MC-200 through to Sub. No. 46. The request for leave to file petition for reconsideration stated:

"1. Conditions in the motor carrier industry have changed materially and as the Act has now been more clearly interpreted by the courts, your applicant's legal rights may be fulfilled, and your applicant believes and urges that the interests of the industry and the shipping public will be best served through reconsideration by the Commission in the light of the current interpretation of the Act.

"2. The denial portions of the orders of the Commission contain numerous ambiguities and inconsistencies in the discussions, findings and orders, which your applicant will set out specifically in its petition if leave to file same is granted by the Commission.

"3. In this connection, your applicant withdraws all statements and recitals made by it in its petitions, briefs, and on the record, which tended to withdraw any of the claims originally made by your applicant."

On July 8, 1947 the petition for reconsideration was denied without opinion, and on January 19, 1948 this case (4974) was filed to enjoin the orders of the Commission. On December 19, 1946 while the above petition for reconsideration was pending, an officer of the plaintiff company sent a letter to the Commission, addressed to the Director of the Bureau of Motor Carriers, pointing out that the certificate did not agree with the order of the Commission dated November 12, 1940 adopting the report and recommended order of October 10, 1940.

With respect to the Riss application, plaintiff seeks to set aside and enjoin that portion of the order of January 29, 1940 of Division 5 of the Commission denying it authority to operate over segments of routes serving Wichita Falls, Fort Worth and Dallas, Texas, and Salt Lake City and Ogden Utah. With respect to the Illmo application, the only question for consideration here is the alleged discrepancy or difference between the provisions of the certificate issued December 30, 1941 and the provisions of the order of Division 5 of the Commission entered on November 12, 1940. The plaintiff makes the same contention with respect to both questions, i. e., "(a) in respect to each and every denial of claimed rights, the order is unsupported by basic and essential findings of fact, (b) the Commission in said order failed to make findings of fact from uncontroverted, pertinent and relevant evidence offered at the hearing before the Commission, which findings, if so made, would necessarily have rendered untenable the conclusions of ultimate fact and law in the order denying to plaintiff each and every of such rights as, claimed in the application, and (c) the findings of fact and conclusions of law of the Commission upon which the denials contained in the order are based are arbitrary, capricious, unsupported by the evidence and contrary to the evidence."

The Government's contentions respecting the issues concerning the route segments serving Wichita Falls, Fort Worth and Dallas, Texas, and Salt Lake City and Ogden, Utah, are that they were not properly before the court for review due to plaintiff's failure to exhaust its administrative remedies, and that in the event the court should determine that the issues should be reviewed, the court should find that the evidence of record supports the findings and conclusions of the Commission.

The Government contends with regard to the alleged inconsistency or error between the Commission's certificate of December 30, 1941 and the order of Division

5 of November 12, 1940 that the Commission has the inherent authority to correct any mistake of a technical or clerical nature shown to exist upon the proper presentation of the matter by the plaintiff to the Commission, and that such error requires no action by this court.

The certificate of public convenience and necessity issued pursuant to the order of the Commission of December 30, 1941 failed to conform to the routes, intermediate and off-route points described and defined in the order of November 12, 1940 which is the basis of the certificate. It is recited in the brief of the United States that on January 21, 1942 and again on February 13, 1942 the plaintiff wrote the Commission requesting the correction of certain clerical errors in the certificate, and, that in July 1942, another certificate was issued to plaintiff correcting the errors which had been complained of.

No petition for reconsideration was filed by the plaintiff of the order of Division 5 of January 29, 1940, and no specific objection was made to the certificate issued by the Commission in December 1941 in the omnibus petition for rehearing filed October 11, 1946. It was not until December 19, 1946, when the president of plaintiff company addressed a letter to the Director, Bureau of Motor Carriers, so far as the evidence shows, that the plaintiff complained of such discrepancy. The letter stated:

"This will acknowledge yours of the 12th instant, File M–599592, enclosing photostatic copy of the recommended report and final order in MC–48511, which number as you know, is now MC–200 Sub-7.

"We have compared the report with the certificated rights which have been consolidated with MC–200 and find that the two do not agree, and we are at a loss to understand the restrictions written into the certificates, which are now included in the order. We shall appreciate the courtesy if you will have someone determine why MC–200 was not brought into the certificate in the same manner in which it was written." This letter did not call the attention of the Commission to any particular discrepancy, but was general in character,

as will be observed from its contents. This letter was written five years after the order had become final. No response to this letter was received from the Commission, and, as heretofore stated, on July 8, 1947 the petition for reconsideration was denied and so far as this proceeding is concerned, no change was made in the certificate of December 30, 1941.

Section 17 (9) of the Transportation Act, Title 49 U.S.C.A. provides: "When an application for rehearing, reargument, or reconsideration of any decision, order, or requirement of a division, an individual Commissioner, or a board with respect to any matter assigned or referred to him or it shall have been made and shall have been denied, or after rehearing, reargument, or reconsideration otherwise disposed of, by the Commission or an appellate division, a suit to enforce, enjoin, suspend, or set aside such decision order, or requirement, in whole or in part, may be brought in a court of the United States under those provisions of law applicable in the case of suits to enforce, enjoin, suspend, or set aside orders of the Commission, but not otherwise."

The Rules of the Commission provide (49 C.F.R. § 1.101 (e): "Except for good cause shown, and upon leave granted, petitions under this section must be filed within 30 days after the date of service of a decision or order granting an application in whole or in part, and within 60 days after the date of service of any other character of decision or order."

The order of November 12, 1940 was an order disposing of all parts of the applications of Riss & Co. and Illmo. At any time subsequent to 30 days thereafter, a suit might have been brought in the United States District Court seeking to enjoin the Commission's orders. However, under the aforesaid rule, there is an exception which apparently authorizes the Commission to grant leave to file such petition for reconsideration after the limitation period provided in the rule.

Upon disposition by the Commission of such a delayed or belated petition, filed pursuant to leave, an action for the review of the Commission's order would

474

lie under the section of the Transportation Act above cited. There is no limitation upon the time when a petition for reconsideration may be filed by leave of the Commission. Thus it would seem that no action of the Commission on any matter of denial ever becomes final, and may always be subject to review of the court, in the event the Commission grants leave to file a petition for reconsideration, and thereafter overrules it for any cause.

However, the mere fact that the court may have jurisdiction by reason of the Commission's action in overruling a petition for reconsideration does not necessarily mean that the court is compelled to review the proceedings and the evidence, and is precluded from determining that the plaintiff has failed to exhaust its administrative remedies. It may be that the plaintiff failed to properly present the matters complained of to the Commission, in order that the Commission might correct any error, oversight or failure to consider some particular bit of evidence respecting some specially designated question. This reasoning we think, should apply to the discrepancy between the Division's order and the certificate. If there was an error, the Commission's attention should have been specifically and definitely called to it.

The plaintiff insists that it did this very thing in its letter of December 19, 1946, but with that contention, we are not able to agree. The letter is general and simply recites in general language that a difference exists between the order and the certificate. Just why the certificate and the order are at variance, we are not able to say, and neither plaintiff nor the defendants have given us any reason for it. We do not know whether the Commission made a mistake, or whether this was their intended result.

The order of December 30, 1941 granting the certificate was made by the same Division 5. This order gave no reason for the changes in the description of the rights granted thereunder as compared to the rights granted originally in the order of November 12, 1940 which approved and adopted the recommended order of the Joint Board.

The petition for reconsideration filed on October 11, 1946 sought a rehearing of all the applications MC–200 to MC–200 (Sub. No. 46), to the grandfather rights of plaintiff, and not to correct an error in the certificate. The Commission has the authority to correct its errors, if there were errors. We cannot say whether there were or not until the Commission has determined that question. If there were no errors, then a finding and conclusion of the Commission should be requested by the plaintiff so that a court may determine whether or not the difference between the Commission's order describing the routes to be served by the plaintiff and the routes described in the certificate, was based upon substantial evidence, or was arbitrary and capricious.

The petition for reconsideration, which did not specifically call the discrepancy to the attention of the Commission, was overruled *without* opinion or comment. Until that issue is determined by the Commission, the court cannot determine whether the Commission's action is sustained by substantial evidence or is arbitrary or capricious. The question is therefore not yet ripe for judicial review.

We next come to the question of the segments of routes serving Wichita Falls, Fort Worth and Dallas, Texas, and Salt Lake City and Ogden, Utah. The Government makes the same contention to this issue as to the one just determined— that the plaintiff has not exhausted its administrative remedies, and therefore this court is without jurisdiction to determine the question. In this connection we think the question is distinguishable from that just discussed, and that the Government is in error.

The petition of October 11, 1946 requested reconsideration of all the grandfather rights sought in all its applications, and which had been denied. Although plaintiff had apparently acquiesced in the order of the Commission granting the certificate of December 30, 1941 until the filing of its application to file a petition for reconsideration in 1946, the application was nevertheless granted, and the petition was filed and subsequently denied. No additional

testimony was offered, and the denial was without opinion.

While the Government's contention may to some extent be correct in that the plaintiff did not, in its petition for reconsideration call the Commission's attention to its failure to give proper consideration to the evidence, and to make definite findings as to specific questions, it would seem that the statutory requirement for review has been met. But, in the court's determination of the plaintiff's contention as to whether or not the orders of the Commission were arbitrary, capricious and in opposition to the evidence in the record, we think the court may take into consideration the state of mind of the plaintiff over the period of five years, during which time it apparently acquiesced in the findings and conclusions and orders of the Commission, and so far as the record is concerned, made no attempt to have it set aside.

The Division 5 order of January 29, 1940 regarding portions of routes 31 and 36 south of Denison, Texas, and the Oklahoma-Texas State line, respectively, to Dallas, Denton and Fort Worth, Texas, found that under the so-called Texas Seven-Thousand-Pound Law, applicant, Riss & Co., found it more practical and expedient to handle its shipments to or from points south of Denison under a contractual arrangement with the Durant Transit Company, a common carrier by motor vehicle, operating over the same routes. Apparently Riss & Co. had no authority from the State of Texas to operate beyond Denison, and for that reason, negotiated its arrangements with others to haul its freight consigned to Dallas, Fort Worth and Denton, and intermediate points.

The Division found that the operation of applicant's vehicles over the portion of such route in controversy was discontinued in 1933 and was not resumed during or within the critical period. The Commission found that the plaintiff had acquired no grandfather rights as a result of the type service conducted by it over this disputed route, and made its conclusions accordingly. The order of the Commission with respect to this route stated: "Operations over the portions of routes 31 and 36 south of

Denison, Texas, and the Oklahoma-Texas State line, respectively, to Dallas, Denton, and Ft. Worth, Tex., were instituted by applicant prior to 1933. After the enactment of the so-called Texas Seven-Thousand-Pound Law, applicant found it more practical and expedient to handle its shipments to or from points south of Denison under a contractual arrangement with the Durant Transit Company, a common carrier by motor vehicle, operating over the same routes. The operation of applicant's vehicles over the portions of such routes was discontinued in 1933 and thereafter shipments were transferred at Denison from applicant's equipment to that of the Durant Transit Company for movement to Dallas, Fort Worth, Denton, and intermediate points, by the latter carrier. Northbound shipments from such points were handled in a similar manner. These shipments moved at rates published in applicant's tariffs and on its waybills. Applicant assumed responsibility for loss or damage to the shipments, carried cargo insurance thereon, and collected the freight charges. The Durant Transit Company held authority from the Texas Commission for operations in Texas and was paid on a flat-sum basis by applicant for the transportation of the considered shipments. Applicant maintained offices at Dallas and Fort Worth and solicited traffic thereat. It has not resumed operations over the considered portions of these routes with its own equipment. It asserts that in all other respects the arrangements for the transportation of such traffic over routes 31 and 36 south of Denison were the same as those over the routes west of Denver."

Upon this finding, the Commission denied the grandfather rights sought, without opinion.

Next the commission denied the application for service of designated routes 39, 42, 43 and 44 from Denver, Colorada, to Salt Lake City, and Ogden, Utah. With respect to this portion of the application, the Commission found:

"During a period of approximately six months in 1932, applicant operated its own equipment over routes 39, 42, and 43 between Denver, Ogden and Salt Lake City,

Utah, and over route 44 between Provo, Utah and Evanston, Wyo. In January 1933, applicant discontinued the operation of its equipment over such routes and entered an arrangement with the Buckingham Transportation Company, a common carrier by motor vehicle, under which the latter carrier transported in its equipment, shipments solicited or originated by applicant, from and to points on these routes. Such equipment moved under applicant's billing and were transferred at Denver from or to the equipment of these respective carriers, according to the direction of movement. Applicant asserts that generally it assumed responsibility for the shipments, carried cargo insurance thereon, paid any loss and damage claims and collected the freight charges. Such shipments moved at rates named in the Colorado-Wyoming Motor Lines' tariff in which applicant and Buckingham were named as participating carriers. As compensation for the transportation of such traffic, Buckingham received a flat sum division of the freight revenue on the westbound shipments. In the event the traffic was solicited and responsibility assumed by Buckingham, the latter carrier received a mileage or rate prorate division of the revenue, which was substantially higher than that received under the flat sum basis. On all eastbound shipments, the revenue was divided on a mileage basis. Applicant admits that during the existence of such arrangements, it interlined shipments with Buckingham and other motor carriers operating over such routes in the ordinary manner. The fact is verified by copies of freight bills introduced in evidence.

"The arrangement with Buckingham continued until October, 1935, when it was terminated by applicant and similar arrangements were made with protestant carrier Utah-California Motor Lines, a common carrier also operating between Denver, Ogden, and Salt Lake City over certain of the considered routes. Shortly thereafter, the arrangements with the latter carrier were discontinued and the previous arrangements with Buckingham were resumed. Sometime later the arrangements with Buckingham were again terminated and the Motor Lines began handling the traffic under substantially similar conditions. Such arrangements continued until June 1936, when applicant began again operations over such routes with its own equipment. Buckingham and the Motor Lines have filed appropriate applications under the 'grandfather' clause of section 206(a) of the act, for authority among other things, to continue operations over the routes here considered. A representative of the latter carrier testified that it had interchanged traffic with applicant during the period May 1934 to June 1936, and that the arrangements with applicant for the transportation of the shipments over the considered routes were not different from the usual interline and interchange arrangements with other motor carriers. Such witness further testified that the Motor Lines exercised full control over the traffic and was responsible for the shipments from the time they were received from applicant. Approximately 700 representative west-bound shipments received by the Motor Lines from applicant at Denver and destined to points in Utah and Wyoming on such routes during the period May 3, 1934 to June 11, 1936 are instanced by the Motor Lines.

"A representative of protestant Interstate Motor Lines testified that this carrier had operated over one of the considered routes between Salt Lake City and Denver since 1932 and that it had interchanged shipments with applicant at Denver since September 1935. The interlining of such shipments with applicants has not been different from that with other motor carriers. Applicant concedes that it has not made any trips with its own equipment over route 42 between Denver and Salt Lake City in its entirety, since 1932."

With respect to this route the Commission held that the arrangement between Riss and Buckingham, and Riss and Utah-California Motor Lines amounted to nothing more than an interchange or interline arrangement, and that no grandfather rights were granted by the Motor Carrier Act for such service, and for that reason, denied it.

Subsequent to the entry of the report and order of Division 5, a number of intervenors filed petition for intervention, which were opposed by the plaintiff. On October 23, 1940, in opposition to the intervention of Byers Transportation Company filed on March 7, 1940 plaintiff stated:

"Comes now Riss & Co., Inc., applicant in the above proceedings and objects to the petition for leave to intervene filed by Byers Transportation Co., Inc., and moves the Commission to disregard and deny same for the following reasons:

"1. This case was tried by Division 5 January 29, 1940. The order therein becoming effective March 20, 1940. Three hearings have been held, the record consists of 895 pages of transcript and 137 exhibits bound in 6 volumes. The case has been pending over three years, which fact was widely known as one of the first cases to be heard under the Motor Carrier Act of 1935. Appellant is not entirely satisfied with the decision, but has refrained from filing Petition for Reconsideration because it believes that it is to its best interest as well as the general public interest that its rights be finally and definitely determined, once and for all."

On March 17, 1940 in opposition to the intervening petition of the Lee Way Transit Company, the plaintiff stated: "Under this rule it is clear that it is now long past the time in which a party might file a petition for rehearing." The plaintiff acquiesced in the Commission's findings and order for a period of five years before seeking to have a reconsideration of the facts upon which the findings were based. Because of this the defendants say that it is guilty of laches and is now estopped to complain.

 In view of what we have heretofore said, we are not willing to sustain the defendants' contention. However, the long period of acquiescence without official complaint, its positive statements respecting the order above quoted, is most persuasive that plaintiff did not feel that the Commission's findings and orders were unsupported by substantial evidence, and were arbitrary and capricious. We think it was a question entirely within the jurisdiction of the Commission to determine—and we cannot say that its findings and conclusions and orders were unsupported by substantial evidence, and were arbitrary and capricious.

The Facts with Respect to the Application of the Monark Motor Freight System, Inc., and Its Acquisition by Riss & Co., Inc.

On January 23, 1936 and within the time prescribed by the Motor Carrier Act, Monark Motor Freight System, Inc., a Missouri corporation, filed with the Commission under the grandfather clause of the statute, an application for a certificate of public convenience and necessity for the carriage of general commodities over routes, to points and within territories in the 19 states of Missouri, Kansas, Nebraska, Colorado, Texas, Oklahoma, Iowa, Illinois, Indiana, Ohio, Pennsylvania, West Virginia, Maryland, New Jersey, New York, Delaware, Rhode Island, Connecticut and Massachusetts. The application was assigned Docket No. MC–30077. A comparison of this application with that of Riss MC–200 reveals that Monark sought to serve the same states plaintiff served, Delaware, Rhode Island and Connecticut, which Riss did not or had not served.

After informal hearings held before District Supervisors of the Commission, and pursuant to report filed by them, an order was entered by the Commission on March 3, 1938 which contained a description of the routes, termini, intermediate and off-route points served by Riss within commercial zones at important cities; irregular route rights for certain specified commodities, and the type of service to be rendered, and authorized the issuance of the described authority upon compliance with certain other sections of the Act. Thereafter a large number of protestants intervened. The Commission revoked the March 3 order and issued a second compliance order on June 13, 1938.

On March 20, 1939 the Commission set aside the compliance orders of March 3, 1938 and June 13, 1938 and a hearing was held in June 1939. Approximately sixty railroads and truck lines entered their ap-

pearance and participated in the hearings, which were exhaustive. Following the hearing, the examiner recommended the grant of some of the routes and points sought in the application and denied the remainder of the rights sought by the plaintiff.

In April 1942 Richard R. Riss, plaintiff's controlling stockholder and Chairman of the Board, acquired control of the Monark Motor Freight System, Inc., through the purchase of 6% of its outstanding capital stock. This acquisition of the Monark System was approved by the Commission on March 13, 1942.

Before any further action was taken with respect to the grandfather rights application proceeding, Riss & Co., Inc., purchased all the operating rights and property of Monark Motor Freight System, Inc. This action was likewise approved by the Commission on September 28, 1942 and confirmed in the plaintiff all rights of Monark in and to certificates of public convenience and necessity under the "grandfather" clause of the statute. The application following the purchase by Riss, was assigned Docket No. MC-200 (Sub. No. 46).

Prior to that time Monark had petitioned for a further hearing on the grounds of inadequate time for preparation and discovery of new evidence. The Commission reopened the proceeding and the second hearing was held in April 1942, with respect to the rights of the applicant under the "grandfather" clause.

In January 1943, the examiner filed an intermediate report and recommended granting to the petitioner certain routes, and denied others. To this order to plaintiff filed exceptions on the ground that the conclusions: "(1) were not justified by the evidence; (2) were contrary to law, and (3) that the examiner erred in that he failed to find that the plaintiff was entitled to operate over all routes to which claim had been made or to serve all intermediate points on the regular routes and certain off-route points, as prayed for, and that he had also erred in failing to find applicant entitled to serve the City of Boston and its commercial zone."

On February 23, 1945 the Commission issued its final report and order in which it denied to plaintiff the right to operate over nine route segments, which were portions of the routes which had been allowed to the plaintiff, and the right to serve certain commercial zones and important termini and intermediate points on its authorized routes.

On March 16, 1945, the plaintiff filed petition for reconsideration of the denial portions of the Commission's order and to stay the effective date thereof as to the nine route segments and the commercial zones and intermediate and off-route points described in its order of February 3, 1945.

On April 23, 1945 the Commission, upon its own motion, entered an order reopening the proceeding designated as "Docket No. MC-200 (Sub. No. 46)" for the purpose of determining whether plaintiff had been in bona fide operation since April 28, 1942 as a carrier by motor vehicle between the points, over the routes, and within the territory covered by the application (Monark) of January 23, 1936. The Commission denied the petition for reconsideration shortly thereafter, as to the nine route segments, and on August 14, 1945 (two days before the effective date of the order) plaintiff filed suit in the United States District Court for the Western District of Missouri at Kansas City, against the United States of America and Interstate Commerce Commission seeking to enjoin enforcement of the order insofar as it denied to the plaintiff the nine route segments claimed by it.

On November 12, 1945 a three-judge court was convened and a temporary stay order restraining enforcement of the denials was issued. Thereafter, on December 3, 1945 the Commission entered an order which it contends was voluntary on its part, vacating that portion of its order of February 3, 1945 affected by the temporary stay order (the 9 route segments) for further consideration on the same record.

On May 9, 1946, plaintiff filed with the Commission a request in writing for leave to file a petition for reconsideration of all the applications for grandfather rights of both plaintiff itself and predecessor corporations, which plaintiff had acquired. This is the application heretofore described in

connection with Riss and Illmo applications in Case No. 4974.

On July 23, 1946 leave was granted to file petition for reconsideration and it was filed on October 11, 1946. The petition for reconsideration was filed while the so-called "provider" case was pending (under the order of the Commission entered April 23, 1945 to determine the question of compliance).

On July 8, 1947 the Commission refused plaintiff's petition for reconsideration filed October 11, 1946 and expressed its intention to immediately enforce those provisions of the order of February 3, 1945 which constituted denials of the operating rights to plaintiff over the nine route segments. Thereafter, on July 23 the plaintiff filed its original complaint in this case seeking to enjoin the enforcement of the denial portions of the orders of February 3, 1945.

The Commission had not yet reconsidered and passed upon the question of plaintiff's right to operate over the nine route segments, and the other issues which had been vacated by the Commission from the order of February 3, 1945 subsequent to the filing of the first suit to enjoin the enforcement of that portion of the order. The suit filed July 23, 1947 did not come on for hearing until October 9, 1948.

On June 10, 1948 pursuant to the hearing under the Commission's order of April 23, 1945 it was found that plaintiff had not been operating as a common carrier within the meaning of the Act and required it to substitute and render reasonably continuous service within sixty days. The changes required by the Commission were made by the plaintiff, and on January 31, 1949 the Commission found that the plaintiff's new method of operation met the Commission's requirements, and on the same day the Commission also entered an order providing for further hearings, for the purpose of determining whether or not Riss & Co., Inc., was conducting its business in compliance with the order of June 10, 1948.

On February 9, 1948 the three-judge court convened for hearing plaintiff's complaint. At that time the "provider plan" investigation was still pending, and because of this fact, the court did not deem it advisable to dispose of the controversy, and entered an order which included the following language: "The Commission has thus in all respects treated the situation as if any phase of it that it desired to touch was still a pending matter (or, more accurately, part of a still pending proceeding), in the sense that none of complainant's vested rights arising out of Monark's grandfather operations or the determination of them has become fixed or final, so as to be beyond the Commission's power to summarily control, change and make further pronouncements. Again it appears that the Commission is also further engaged in an investigation of whether, since the grandfather rights cut-off date, Complainant has so changed its mode of operations that it can no longer claim to be a common carrier and so has no right to any certificates at all. And in dealing with this question and in countermanding the effective date of its previous certificate-right determination, it purportedly is acting under its powers of determining initial certificate rights and not under the statutory provisions for revoking rights previously determined and fixed."

The route segments denied to the plaintiff in the order of February 3, 1945 were:

"(a) Between Decatur, Ill., and Indianapolis, Ind., over U. S. Highway 36.

"(b) Between Shoals, Ind., and Louisville, Ky., over U. S. Highway 150.

"(c) Between Indianapolis, Ind., and Chicago, Ill., over U. S. Highways 52 and 41.

"(d) Between Cincinnati, Ohio, and Mansfield, Ohio, over U. S. Highway 42.

"(e) Between Cincinnati, Ohio, and Zanesville, Ohio, over U. S. Highway 22.

"(f) Between Fort Wayne, Ind., and Toledo, Ohio, over U. S. Highway 24.

"(g) Between Cleveland and Lisbon, Ohio, over Ohio Highway 14; and between Salem and Lisbon, Ohio, over Ohio Highway 45.

"(h) Between New York, N. Y., and Springfield, Mass., over U. S. Highways 1 and 5.

"(i) Between Baltimore, Md., and Philadelphia, Pa., over U. S. Highways 40 and 13."

On October 4, 1948, the Commission entered its order relating to the 9 route segments above described, and found that the plaintiff was entitled to grandfather rights over 7 of the 9 route segments, with certain reservations with respect to off-route and intermediate points. The routes granted and the reservations are as follows:

"1. Between Decatur, Ill., and Indianapolis, Ind., over U. S. Highway 36.

"No service is authorized to or from Decatur.

"2. Between Shoals, Ind., and Louisville, Ky., over U. S. Highway 150.

"No service is authorized to or from Shoals.

"3. Between Indianapolis, Ind., and junction U. S. Highways 52 and 24 (near Kentland, Ind.) over U. S. Highway 52.

"No service is authorized to or from the said junction.

"4. Between Cincinnati, Ohio, and Zanesville, Ohio, over U. S. Highway 22.

"No service is authorized to or from Zanesville.

"5. Between Fort Wayne, Ind., and Toledo, Ohio, over U. S. Highway 24.

"No service is authorized over this route between Toledo, on the one hand, and, on the other, points east of the Illinois-Indiana State line.

"6. Between Cleveland, Ohio, and Deerfield, Ohio, over Ohio Highway 14.

"No service is authorized to or from Deerfield.

"7. Between New York, N. Y., and Springfield, Mass., over U. S. Highway 1 to New Haven, Conn., and thence over U. S. Highway 5 to Springfield.

"No service is authorized to or from any intermediate point on the above-described routes."

The effective date of the order was December 13, 1948. When this order was entered, the "provider plan" investigation was still pending.

On January 26, 1950, a hearing was held by the three-judge court upon the application of the defendants and intervenors for the purpose of securing a final hearing on the merits of this action. At the time of this hearing the Commission had not issued to plaintiff its final certificate of public convenience and necessity, but subsequently the Commission did issue a certificate of public convenience and necessity. This certificate became effective February 21, 1950 and incorporated within its contents the operating authority granted in the orders of February 3, 1945 and October 4, 1948.

On April 4, 1950 the plaintiff filed an amended complaint in which it sought to enjoin the Commission from enforcing this certificate, and also to set aside the denial portions of the order (the route segments included in the denials of the October 4, 1948 order) and described in its complaint as:

"(1) A segment of U. S. Highway 41 between its junction with U. S. Highway 24 and its junction with U. S. Highway 30; This is a North-South route, part of the route between Chicago, Indianapolis and Louisville.

"(2) A segment of U. S. Highway 42 between Cincinnati, Ohio, and Mansfield, Ohio.

"(3) A segment of Ohio State Highway 14 between U. S. Highway 224 and U. S. Highway 30. This is a small but highly important segment, on the most direct and natural route from Cleveland to Philadelphia and New York.

"(4) U. S. Highway 40 between Baltimore, Maryland and Philadelphia, Pennsylvania.

"(5) U. S. Highway No. 1 between New Haven, Connecticut and Boston, Massachusetts."

Most of these segments served as connecting links between main east an west routes and run north and south.

The contention of the Government with respect to the issues involved in Case No. 4806 are the same as those involved in Case No. 4974 heretofore discussed, i. e., they

are not properly before the court for review, due to the plaintiff's failure to exhaust its administrative remedies, and in the event the court should determine that the issues should be reviewed, the court should find that the evidence of record supports the findings and conclusions of the Commission.

With the exception of the one route "U. S. Highway No. 1 between New Haven, Conn., and Boston, Mass.," which will be discussed hereafter, we think the issues are properly before the court for review.

In the report of the Commission of October 4, 1948 the evidence with respect to each of the 9 route segments under consideration at that time was reviewed and additional findings were made. On Sheet 5 of the Commission's report, it used this language: "Each of the route segments will be discussed separately. In arriving at our conclusions as to whether or not applicant is entitled to 'grandfather' rights with respect to the route segments, we shall consider all shipments which might reasonably have moved over the segment in question. In other words, if the particular route segment would constitute part of the natural arteries of travel between points actually served on and since the statutory date and there is some evidence that the route segment actually was used, appropriate authority will be granted to continue operations over such route segment." We think it is not necessary to repeat what the Commission has said in its order of October 4, 1948 relative to each of the routes in controversy, but in accordance with its statement above quoted, the Commission apparently reviewed very carefully the evidence with respect to all of the 9 route segments in controversy, discussed the evidence as to the time and nature of the service shown to have been rendered by the plaintiff over said routes and to the intermediate and off-route points, and based its findings and conclusions upon such evidence. The report covers numerous pages of the Commission's order. With respect to the denied route, the Commission, after this complete surveillance of the record, held there was no showing that plaintiff had served such routes or segments prior to or during the critical period.

With regard to the other routes—the ones allowed with reservations—the Commission carefully considered the evidence as to the alleged service by the plaintiff to the points allowed, and upon its finding that plaintiff failed to serve the denied intermediate and off-route points, refused plaintiff the right to serve said intermediate and off-route points. We are quoting herein the findings of the Commission with respect to one of the denied routes—the segment between Indianapolis and Chicago, and described in the plaintiff's brief as:

"A segment of U. S. Highway 41 between its junction with U. S. Highway 24 and its junction with U. S. Highway 30; This is a North-South route, part of the route between Chicago, Indianapolis and Louisville.

\* \* \* \* \* \*

"Indianapolis-Chicago.—This route segment embraces U. S. Highways 52 and 41 between Indianapolis and Chicago. It is part of claimed route 15 between Louisville and Omaha, from Louisville over U. S. Highway 31 through Seymour to Indianapolis, thence over U. S. Highway 52 to its junction with U. S. Highway 41, thence over U. S. Highway 41 to Chicago, thence over highways described in other routes to Omaha. Portions of claimed route 15 have been granted in the prior report, namely, between Louisville and Indianapolis, and between Chicago and the junction of U. S. Highway 41 and U. S. Highway 30 near Dyer, Ind. Thus the only portion of the described route segment requiring consideration is U. S. Highway 52 between Indianapolis and the junction of that highway with U. S. Highway 41 and U. S. Highway 41 between the last-described junction and the junction of U. S. Highways 41 and 30 near Dyer. This segment connects (near Kentland, Ind.) with applicant's authorized route over U. S. Highway 24 between Peoria, Ill., and Fort Wayne.

"There is some oral evidence which indicates that during the prior period shipments from Louisville to Omaha and

Council Bluffs were transported over U. S. Highway 31 to Indianapolis, thence over U. S. Highway 52 to its junction with U. S. Highway 41, thence over U. S. Highway 41 to Chicago, and thence over other highways to destination. Shipments from Louisville to Omaha and Council Bluffs were heretofore discussed in connection with the Shoals-Louisville route segment. In any event, it would appear that the more direct and natural route for shipments from Louisville to Omaha and Council Bluffs would be over the Shoals-Louisville route segment, thence over applicant's authorized routes through St. Louis and Kansas City to destination.

"There is no documentary evidence of operations by applicant between Chicago and Louisville, or between Indianapolis and Chicago during the prior or interim periods. It is probable, however, that portion of this route segment was used by applicant in connection with operations between Omaha and Cincinnati. Thus in the prior report, the division, in discussing operations over claimed route 7 between Omaha and New York City, through Peoria and Fort Wayne, stated: 'In the prior and interim periods and thereafter, applicant also transported various commodities between Omaha and New York, respectively, and intermediate points on route 7, and between such respective termini, on the one hand, and, on the other, numerous points on its routes. With regard to Omaha, the more substantial operations were to and from Cincinnati * * *.'

"A natural and direct route between Cincinnati and Omaha would be over applicant's authorized route from Cincinnati to Indianapolis, thence over that portion of the Indianapolis-Chicago segment consisting of U. S. Highway 52 from Indianapolis to junction U. S. Highway 24 near Kentland, and thence over applicant's authorized routes through Peoria and Galesburg, Ill., to Omaha. As stated, applicant has rendered a substantial operation between Cincinnati and Omaha. In the circumstances, we conclude that applicant is entitled to authority to continue the transportation of general commodities with exceptions, over U. S. Highway 52 between Indianapolis and junction U. S. Highway 24 near Kentland. No service, however, is shown to have been rendered by applicant on or prior to the critical date to or from the said junction or intermediate points on U. S. Highway 52. Accordingly, the application to this extent will be denied."

This is typical of the Commission's apparent close consideration of the evidence of all of the routes, segments of routes, intermediate and off-route points, which are the subject of the controversy. Finally, in its general discussions and conclusions, the Commission used this language:

"*General Discussion and Conclusions.—* In the foregoing discussion we have considered all the evidence presented by applicant relative to the actual use of the nine route segments described, as well as the service rendered at points located thereon. The documentary evidence listing representative shipments transported by applicant is of value in that it indicates whether operations have been conducted on and continuously since the critical date, and the substantiality of the service performed. In the matter of the described route segments, it is seen that they are not claimed as complete routes in and of themselves, but either as portions of other and, in many instances, longer routes between other termini or as connecting links in forming such routes. In determining what highways were use, or reasonably could be said to have been used, in connection with these routes, we have considered all of the evidence. Included in such evidence is the testimony of qualified witnesses presumably familiar with the operations of applicant on and since the critical date. We also have taken into consideration the existence of natural and direct highways between the termini of the principal routes claimed, to which the instant route segments are adjunct or alternative, the rendition or nonrendition of service at intermediate points on the routes affected, and the substantiality and continuity of service where afforded. In our opinion, the evidence warrants the granting of authority to continue operations in the transportation of general commodities, with the exceptions noted, between the points,

over the routes, and in the manner set forth in our findings herein.

"The routes granted herein will form portions of through routes from and to various parts of applicant's authorized system of regular routes, and service therefore will be authorized over any combination of the routes granted herein with those presently authorized, regardless of whether the routes joined have a common authorized point of service."

The only other route involved in this order was U. S. Highway No. 1 between New Haven, Connecticut, and Boston, Massachusetts, with respect to which the plaintiff contends that no findings were made either in the order of February 3, 1945 or of October 4, 1948. Later in this memorandum we will discuss the disposition of this particular route or route segment separately from the ones included in the plaintiff's complaint.

If the report of the Commission is carefully read, one cannot escape the conclusion that the Commission considered very thoroughly all of the evidence with respect to Monark's service over the disputed routes prior to the critical period and made its findings and conclusions with respect thereto.

The Commission is the fact-finding body. The court does not make findings of fact, but simply determines whether or not the Commission's findings are supported by substantial evidence. Although the Court and the Commission might differ with respect to the weight of the evidence, or what the evidence reveals, yet that does not give the Court the right to decide whether or not the Commission is mistaken in its findings, if there is substantial evidence upon which to base those findings. In reviewing the evidence there may be instances where our finding would be different from that of the Commission, but we have no authority to substitute our opinion for that of the Commission, any more than an appellate court has the right to substitute its views as to the facts for that of a trial court or jury.

While a finding is not made with respect to the testimony of each and every witness and each and every exhibit, the over-all question of the weight of the evidence with regard to the particular route or the particular town sought to be served, is made. It is our thought that unless a request is made to the Commission to make specific findings as to particular issues or evidence—a basic or essential finding, if supported by the evidence, is sufficient to uphold the Commission's order. State of Florida v. U. S., 282 U.S. 194, 209, 51 S.Ct. 119, 75 L.Ed. 291. We think there was substantial evidence upon which to base the Commission's findings.

As heretofore indicated, the plaintiff insists that the Commission failed to make any finding whatsoever as to "U. S. Highway No. 1 between New Haven, Conn., and Boston, Mass." either in its order of February 3, 1945 or any subsequent orders thereto, including the order of October 4, 1948 with respect to the 9 route segments. We do not know, and no one has informed us, whether or not the failure of the Commission to definitely make a finding as to this route in its disposition of the issues was an error, or whether it was intentional.

As we stated with respect to the same question heretofore determined in regard to Case No. 4974, we are unable to determine whether or not the Commission failed to take into consideration the evidence in relation to this route, and if so, whether or not that evidence was sufficient to sustain its views, or whether or not its actions were arbitrary and capricious. We think the plaintiff should call the Commission's attention specifically to this particular phase of the case so that it may correct the error, if there is an error, and if not, it may make the proper finding upon which to base a judicial review. As the situation stands, this question is not yet ripe for judicial review.

The next contention of plaintiff is in relation to the Commission's denial to it of the right to serve commercial zones in most of the major terminal areas to which it is authorized to operate. It is contended that the denial of such rights is clearly opposed to the evidence and not grounded upon any rational or consistent basis. These areas were not included in the petition for recon-

sideration of the 9 route segments, or in the Commission's order with respect to that petition. Plaintiff in its brief alleges that the February 3, 1945 certificate permits it to operate in the commercial zones of Kansas City and Chicago only, and that it is restricted to the municipal limits in its operation of these cities as of Boston, New York, Philadelphia, St. Louis, Cleveland and Cincinnati among others.

It is further contended that the commercial zones of a city include municipal or unincorporated towns contiguous or adjacent to the base municipality, and that the commercial areas of such cities, because of the tremendous growth outside of the municipal limits thereof, are in many instances more important in commercial and industrial activity than the municipalities themselves, and that to deny it the right to serve such commercial zones is a violation of its rights.

 Plaintiff has not cited to us any specific definition of the phrase "commercial zone." The court may take judicial notice of the fact that the industrial and business development outside of many of the large cities has grown to tremendous proportions, as plaintiff suggests; that because of such development, in many instances it is not possible for large cities to extend their municipal boundaries, and it is likely that such industrial and commercial growth will continue to expand far beyond the municipal limits of such cities.

We are not able to judicially define the term "commercial zone" with sufficient definiteness to make it apply to each and every city. We think, because of the vast experience of the Interstate Commerce Commission in resolving such questions, that where such an issue arises, the Commission's judgment, unless clearly legally unreasonable, should be accepted. In making its findings as to commercial zones, the Commission unquestionably must decide many questions of fact which the court is not empowered to determine, and must take into consideration certificates and rights which have been granted to other carriers.

 Of course, it is easily conceivable that from a financial standpoint it would be far more profitable to a carrier if it were permitted to serve the commercial zones in cities such as described above without restriction, but the Congress has conferred upon the Commission the authority to determine such questions. It is obvious that as a matter of law, the Commission cannot act capriciously or arbitrarily in arriving at its conclusions.

 After carefully considering the various elements pertaining to this issue, it is our opinion that the Commission has not acted arbitrarily or capriciously in this instance. The decision of complex transportation matters requires the exercise of the highest degree of judgment, not obtained without intricate detail and such matter is not properly the function of the reviewing court. State of New York v. U. S., 331 U.S. 284, 335, 67 S.Ct. 1207, 91 L.Ed. 1492; Board of Trade of Kansas City v. U. S., 314 U.S. 534, 546, 62 S.Ct. 366, 86 L.Ed. 432.

Plaintiff is engaged in an extensive and complex operation covering routes extending in more than 20 states, from the Rocky Mountains on the west, to the Atlantic Coast on the east; from Massachusetts on the north, to Oklahoma on the south. When one considers the many complex problems incident to a determination of the rights of the plaintiff, and those through whom it claims, the Commission unquestionably has experienced great difficulty in arriving at the correct factual situation presented by the great amount of evidence submitted by the plaintiff.

In addition to this particular claimant, the Commission has also been required to study and determine many applications from other motor carriers seeking grandfather rights in the same states, in the same areas, over the same routes and to the same intermediate and off-route points. When one contemplates the entire situation, the Commission in determining plaintiff's rights apparently has established the parity between future operations and bona fide prior operations for which the Act was obviously designed. U. S. v. Carolina Freight Carrier Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971; Alton R. Co. v. U. S., 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586.

It is our opinion, after careful consideration of the entire record in both cases, that with the exceptions noted in this memorandum as to certain questions with respect to which plaintiff has not exhausted its administrative remedies, the Commission's orders are supported by adequate findings and conclusions, based upon substantial evidence, and plaintiff's complaint is hereby dismissed.