**ANDREWS VAN LINES, INC., Plaintiff,**
v.
**UNITED STATES of America**
and
**Interstate Commerce Commission,**
**Defendants,**
and
**North American Van Lines, Inc., Alaska Orient Van Service, Inc., and Smyth Overseas Van Lines, Inc., Intervening Defendants.[1]**

**Civ. A. No. 980 L.**

United States District Court
D. Nebraska.

Oct. 25, 1966.

See also D.C., 240 F.Supp. 763.

**1.** The designated "intervening defendants" are those entities within that description which remain as active parties to this litigation. Pursuant to motion, filed herein on June 16, 1966 (filing 26), by Security Van Lines, Inc., then and theretofore an intervening plaintiff herein, thus, after the submission of this proceeding to this court on June 6, 1966, an order of this court was made and given (filing 27) on June 23, 1966, dismissing the complaint of the intervening plaintiff, Security Van Lines, Inc. Theretofore, that intervening plaintiff, pursuant to motion to intervene as plaintiff (filing 2), filed on June 28, 1965, concurrently with the filing of plaintiff's complaint, and through counsel who also represented, and now represent, plaintiff, and by an order of this court (filing 6) made and given on July 16, 1965, was granted leave to intervene herein as a plaintiff. Its intervenor's complaint had been filed herein along with its motion to intervene as plaintiff (filing 2). Thereafter, and until June 23, 1966 (filing 27), it remained and was a party to this proceeding. However, as the record discloses, it had explicitly refrained from participation in the submission of the proceeding to this court. It is, therefore, no longer a litigant here. Of course, in the consideration of this case, the evidence, so far as it was received before the Interstate Commerce Commission during the participation in the proceedings of Security Van Lines, Inc., as a litigant before the Commission, and has been submitted to this court, has had the court's consideration.

J. Max Harding, Charles J. Kimball, and Duane W. Acklie, Nelson, Harding, Acklie, Leonard & Tate, Lincoln, Neb., for plaintiff.

Donald F. Turner, Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., and Theodore L. Richling, U. S. Atty., and Russell Blumenthal, Asst. U. S. Atty., Omaha, Neb., for defendant, United States.

Robert W. Ginnane, Gen. Counsel, Leonard S. Goodman, Asst. Gen. Counsel, Manny H. Smith, Atty., Interstate Commerce Commission, Washington, D. C., Theodore L. Richling, U. S. Atty., and Russell Blumenthal, Asst. U. S. Atty., Omaha, Neb., for defendant, Interstate Commerce Commission.

Martin A. Weissert, Fort Wayne, Ind., and Marshall D. Becker, Stern, Harris, Feldman & Becker, Omaha, Neb., for intervening defendant, North American Van Lines, Inc.

Alan F. Wohlstetter, and Joseph F. Mullins, Jr., Denning & Wohlstetter, Washington, D. C., and Stern, Harris, Feldman & Becker, Omaha, Neb., for intervening defendants, Alaska Orient Van Service, Inc., and Smyth Overseas Van Lines, Inc.

## MEMORANDUM

Before JOHNSEN, Senior Circuit Judge, VAN PELT, District Judge, and DELEHANT, Senior District Judge.

DELEHANT, Senior District Judge.

The jurisdiction of this court is properly claimed under Title 28 U.S.C. § 1336(a), its venue by virtue of Title 28 U.S.C. § 1398(a).

Plaintiff is a corporation organized under the laws of Nebraska, with its principal place of business in the City of Norfolk, in such state, and is, therefore, a citizen of Nebraska. It is and, for several years heretofore, has been engaged in business as a common carrier by

motor vehicle of property, particularly of household goods, in interstate commerce, operating under and in pursuance of sundry certificates of public convenience and necessity issued by the Interstate Commerce Commission. (See Docket No. MC–26825, and Subs. thereto)

Proceeding within Title 28 U.S.C., chapter 157, plaintiff, on June 28, 1965, instituted herein the present action to set aside, vacate and annul an order, or orders, of the Interstate Commerce Commission, as identified infra. Responsive to the prayer of plaintiff's complaint, and in accordance with Title 28 U.S.C., §§ 2284(1) and 2325, designation of a three judge court "to hear and determine said action and proceeding" was timely made on July 8, 1965, by the then Chief Judge of the Court of Appeals of the Eighth Judicial Circuit (filing 4).[2]

The historical background of the institution in this court of the present proceeding is now recalled with appropriate brevity. What is directly involved in it is the authority to transport "household goods" in interstate commerce. In paragraph numbered 5 of its complaint, plaintiff correctly asserts that "on various dates from 1958 to 1964 *plaintiff and 11 other common carriers of household goods, filed applications before the Interstate Commerce Commission seeking certificates of public convenience and necessity, authorizing extension of their operations to include the transportation of household goods as defined by the Commission between points in Alaska on the one hand, and on the other, points in the continental United States other than Alaska.* Certain carriers also sought authority to transport such commodities between points in Alaska; plaintiff did not seek such authority." (emphasis added)[3] Those applications were resisted by various motor carriers, including (in addition to others) the intervening defendants above identified. The "lead case docket" in the proceeding thus precipitated was "United Van Lines, Inc., Extension, Alaska, No. MC–67234, Sub-No. 2." The applications were referred to an Examiner of the Commission for hearing and report, and for the recommendation of appropriate order or orders. Such hearing was had, in fact, involving several hearings at different places, but ultimately a hearing *de novo* at Seattle, Washington, from May 18 through May 22, 1964. It included the presentation of evidence and testimony tendered in behalf of the parties litigant, and, among other items, evidence and testimony from representatives of national governmental entities, principally the Household Goods Traffic Division of the Defense Transportation Management Service, infra.

The Examiner, in and by a report and recommended order served on September 16, 1964, found that public convenience and necessity were not shown to require operation by the applicants (including plaintiff) as common carriers by motor vehicle of household goods between points in Alaska on the one hand, and, on the other, points in the continental United States other than Alaska, or between points in Alaska,[4] and recommended an order accordingly. The plaintiff, on November 4, 1964, tendered exceptions to the Examiner's Report and Recommendation.

**2.** By an order entered herein on June 3, 1966 (filing 24, actually filed on June 6, 1966), a substituted designation of judges of such court was made by the then and now Chief Judge of the United States Court of Appeals, Eighth Circuit, whereby the personnel of such court has since consisted, and now consists, of the three judges identified in the caption hereof.

**3.** It is here merely noted that plaintiff's application was originally filed by Albert Roy Andrews, an individual doing business as Andrews Van Lines, but that thereafter Andrews Van Lines, Inc., as his corporate successor, was substituted as the applicant.

**4.** The finding, so far as it was operative "between points in Alaska," though responsive to the demands of some of the applicants other than plaintiff, was not directly pertinent to the plaintiff's application which sought no such authority, supra. The same observation extends to that aspect of the suggested order.

On April 29, 1965, service was made of the Report and Order of the Commission, by its Division 1, wherein, pursuant to a decision under date of April 23, 1965, it was found that public convenience and necessity were not shown to require operation by the applicants, including the plaintiff, as common carriers by motor vehicle of household goods between points in Alaska, and points in the continental United States other than Alaska, and was foreshadowed that an order would be entered accordingly.[5] The plaintiff, thereupon, filed with the Commission a petition for a finding of general transportation importance, and in connection with it, a petition for reconsideration.

But on June 10, 1965, service was effected of the Order of the Interstate Commerce Commission, made and given at a general session of the Commission on May 28, 1965, wherein and whereby the plaintiff's petition for a finding of general transportation importance (along with, and in the same manner as, like petitions of United Van Lines, Inc., Allied Van Lines, Inc., and Aero Mayflower Transit Company, Inc.) was "denied, for the reason, that in the judgment of the Commission, no issues of general transportation importance are involved." And, as plaintiff alleges, the Commission "shortly thereafter" rejected plaintiff's petition for reconsideration," supra.

Promptly thereafter, and on June 28, 1965, plaintiff instituted this proceeding through the filing herein of its complaint (filing 1). That pleading, preliminary to its prayer, is set forth in twelve numbered paragraphs (exclusive of the unnecessary assignment of number 13 to the prayer). Of such paragraphs, those numbered 1 to 9, both inclusive, allege the historical background which has just been restated, and paragraph numbered 12 asserts the nature of the plaintiff's financial interest in the litigation and allegedly prospective damage, if it be not successful herein. In paragraphs numbered 10 and 11 of the complaint, plaintiff undertakes to specify the respects in which it challenges the validity of the Commission's findings and orders. It appears to be in order immediately hereinafter to recall those specifications with reasonable detail.

In paragraph numbered 10, plaintiff charges that the orders of the Commission:

(1) are contrary to the provisions of the National Transportation Policy (for the source of which it cites Title 49 U.S.C., preceding section 301, and also sections 304, 306 and 307);

(2) are not supported by the evidence;

(3) are without support in fact or in law; and,

(4) would deprive plaintiff of a substantial amount of motor carrier traffic which it would otherwise receive.

And in paragraph numbered 11, plaintiff charges that the orders, and the Commission's action in their entry, are arbitrary, capricious and unreasonable, and constitute an abuse of administrative discretion in that they:

A. Contain the illogical, unwarranted and unsupported assumption that public convenience and necessity have not been shown to require the proposed service of plaintiff;

B. Fail properly to appraise and evaluate the evidence of record in light of the standards imposed by Title 49 U.S.C., sections 306 and 307, and the standards developed by the Commission for the disposition of common carrier applications;

C. Are based on an interpretation of the facts which is general, conclusionary and not specific, and which is unwarranted, ambiguous

5. To the portion of the Report and Order reflected in the sentence to which this footnote is appended, one Commissioner of Division 1 dissented. The Report and Order also dealt with another aspect of the proceeding not presently involved. Upon that aspect, there was no dissent.

and not based on the record and the need for services shown therein;

D. Are erroneous in concluding that existing service is adequate for the involved shippers' needs when, even if such services were adequate, the reason for such adequacy is the fact that the shippers have had available the services of several carriers, including the plaintiff, in recent years;

E. Would deprive the involved shippers of the flexible multi-mode service they have had in the past, and require at present and in the future;

F. Disclose that the Commission has (1) disregarded, or improperly discounted, the evidence showing the shippers' need for single-line service in both all highway and land-sea-land modes of transportation, (2) substantially understated the volume of the subject traffic involved, and (3) failed to consider the expanding future service requirements of shippers of the subject traffic and the importance of adequate direct line motor carrier service to the growth of the shippers in the areas in which they do business;

G. (1) Misstate, and fail to give proper weight to, the evidence showing the effect of a denial of the application to the plaintiff, and (2) fail to distinguish between carriers such as the plaintiff herein, who have conducted over-the-highway operations between Alaska and the continental states other than Alaska, and the other applicants who have never conducted such operations;

H. Contrary to the evidence and applicable law, grant a monopoly to North American Van Lines, Inc., on direct line service on all traffic moving between Alaska and the continental states other than Alaska;

I. Are based upon a misinterpretation of the law and the evidence as to the effect of the requested grant on the only carrier permanently authorized to handle the subject traffic on a direct line basis; and

J. Are inconsistent with the decisions of the Interstate Commerce Commission reached in similar proceedings, and fail to give proper effect and weight to the rules set forth in United Moving and Storage, Inc., Extension, 32 M.C.C., 359, providing that the quantum of proof in household goods carriers' cases is substantially less than in cases involving other types of freight.

The complaint concludes with its prayer, supra, which (after demands for the issuance of process, and for the erection for the case of a three judge court, with both of which compliance has been made) prays that, upon hearing, the court, by its order and decree, set aside, vacate and annul the orders of the Interstate Commerce Commission complained of, and that the court, by its order and decree, remand this matter to the Interstate Commerce Commission with directions to grant the plaintiff's application, and for general relief.

The defendants, United States of America and Interstate Commerce Commission, joined in an answer to plaintiff's complaint wherein they admitted the plaintiff's incorporation and corporate residence in Nebraska, the existence of the Commission as an independent agency of the United States, and the plaintiff's alleged purpose in bringing this action; also admitted the plaintiff's alleged status as a common carrier of property in interstate and foreign commerce, operating under the authority of certificates of public convenience and necessity issued by the Commission in Docket No. MC–26825, and various subs. thereto; the filing by plaintiff and eleven other carriers of household goods, from 1958 to 1964, before the Commission of applications seeking certificates of public convenience and necessity au-

thorizing extension of their operations to include the transportation of household goods as defined by the Commission between points in Alaska on the one hand, and on the other, points in the continental United States other than Alaska, and the history of the proceedings thereon before the Commission, as alleged by the plaintiff, supra, and plaintiff's exhaustion therein of its administrative remedy before the Commission (but with the averment of the recommended report of the Examiner and of the Commission, Division 1, as the measure of the action theretofore taken by the Examiner and the Commission); deny the allegations of paragraphs numbered 10 and 11 of the complaint, supra, and, while admitting the plaintiff's substantial interest in the matters by it complained of, and the immunity of the defendants to any claims for damage for failure of the Commission to grant the authority requested by plaintiff, deny that the Commission's action under review results in irreparable damage to plaintiff and the shipping public (asserting that any such damage to plaintiff is *damnum absque injuria*); deny all other allegations of the complaint unadmitted by the answering defendants; and deny that the Commission's challenged orders are invalid for any reason, but allege that such orders are valid and lawful. And those answering defendants pray for the dismissal of the complaint, and for denial of the relief by it requested.

Upon their petitions therefor, leave to intervene was separately granted to North American Van Lines, Inc., and was also granted in a single order to Alaska Orient Van Service and Smyth Overseas Van Lines, Inc.

Pursuant to such leave, North American Van Lines, Inc. filed answer to plaintiff's complaint, and therein admitted the allegations of paragraphs 1 through 9, supra, of the complaint, and denied all other allegations of the complaint, supra, and prayed for the dismissal of plaintiff's complaint.

And also pursuant to such leave, Alaska Orient Van Service and Smyth Overseas Van Lines, Inc. joined in a single answer to the complaint, and therein admitted the allegations of paragraphs 1 through 9, supra, of the complaint, and denied all other allegations of the complaint, and prayed for the dismissal of plaintiff's complaint.

■ Hearing was held before this court, constituted as hereinbefore disclosed, at Lincoln, Nebraska, on June 6, 1966, commencing at 9:30 o'clock A.M. In and as a part of such hearing, and by way of evidence, an exhibit was tendered and received in the form of a certificate of the Secretary of the Interstate Commerce Commission, identifying and vouching for copies of portions of the record in the foregoing proceeding before the Commission, including: (a) transcript of the stenographer's notes of the hearing held at Seattle, Washington on May 18, and May 21, 1964; (b) sundry exhibits filed at the hearing held at Seattle, Washington on May 18 to May 22, 1964, both dates inclusive; (c) Report and Order recommended by Examiner on September 16, 1964, supra; (d) Exceptions to that Report and Recommended Order filed by plaintiff on November 9, 1964; (e) Report of the Commission as of April 23, 1965, supra; (f) Plaintiff's Petition for Reconsideration filed May 14, 1965; (g) Plaintiff's Petition for finding of General Transportation Importance filed May 14, 1965, supra; and (h) Order of the Commission dated May 28, 1965, supra.[6] (See later filing of further evidence, infra.)

As a part of such hearing before this court, oral arguments were made by counsel for the litigants. Counsel for the litigants have also submitted type-

---

**6.** It is obvious that the exhibit thus introduced and received reflects a selective gleaning, in the way both of oral evidence and of exhibits, from the record of the Seattle hearing, rather than a complete transcript of such hearing. That manner of submission is not uncommon or censurable in the presentation of litigation of the present character.

written briefs in behalf of their respective clients. And the issues are considered to be submitted for the ruling of this court.

■ Appropriately, as it is believed, recognition is initially accorded to the imperative limitation upon the scope of the proper inquiry and action of this court in the present proceeding. What is involved is the judicial review of an order or orders of the Interstate Commerce Commission upon a controversy statutorily committed to the Commission's consideration and determination. In the exercise of its jurisdiction for that purpose, this court must observe the restrictions broadly imposed upon it in its review of the actions of referees and commissioners generally. But it must, also, and especially in the present instance, recognize and comply with the rule of administrative finality. Thus, its "judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Mississippi Valley Barge Line Company v. United States, 292 U.S. 282, 286, 287, 54 S.Ct. 692, 694, 78 L.Ed. 1260. "It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law." United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 536, 66 S.Ct. 687, 698, 90 L.Ed. 821; Interstate Commerce Commission v. Union Pacific Railroad Company, 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308; United States v. Carolina Freight Carriers Corporation, 315 U.S. 475, 484, 490, 62 S.Ct. 722, 86 L.Ed. 971. In Riss & Company, Inc. v. United States (D.C. Mo.) 100 F.Supp. 468, 483, affirmed 342 U.S. 937, 72 S.Ct. 559, 96 L.Ed. 697, the trial court pertinently said:

"The Commission is the fact-finding body. The court does not make findings of fact, but simply determines whether or not the Commission's findings are supported by substantial evidence. Although the Court and the Commission might differ with respect to the weight of the evidence, or what the evidence reveals, yet that does not give the Court the right to decide whether or not the Commission is mistaken in its findings, if there is substantial evidence on which to base those findings. In reviewing the evidence there may be instances where our finding would be different from that of the Commission, but we have no authority to substitute our opinion for that of the Commission, any more than an appellate court has the right to substitute its views as to the facts for that of a trial court or jury."

■ The burden of presenting to this court the record of the evidence submitted to the Commission rests upon the plaintiff. Mississippi Valley Barge Line Company v. United States, 292 U.S. 282, 286, 54 S.Ct. 692, 78 L.Ed. 1260; Motor Freight Express v. United States (D.C. Pa.) 119 F.Supp. 298, 303, affirmed 348 U.S. 891, 75 S.Ct. 215, 99 L.Ed. 700. Moreover, the burden of showing an invalidating infirmity in the challenged order rests upon the plaintiff. The incidence of that burden is peculiarly appropriate in cases of the present character, because, in the very nature of the right, by the plaintiff sought before the Commission, the burden of establishing the existence of the facts necessary to support plaintiff's demand in the proceeding before the Commission was constantly upon the applicant therein, the plaintiff here. McDonald v. Thompson, 305 U.S. 263, 266, 59 S.Ct. 176, 83 L.Ed. 164; Alton Railroad Company v. United States, 315 U.S. 15, 25, 62 S.Ct. 432, 86 L.Ed. 586; Chicago, St. Paul, Minneapolis & Omaha Railway Company v. United States (D.C.Minn.) 50 F.Supp. 249, 252, affirmed 322 U.S. 1, 62 S.Ct. 842, 88 L.Ed. 1093.

This court has frequently considered the question of the proper limitation upon its function in the instant area of litigation, and has consistently adhered to the positions reflected in the foregoing citations. Mentioned as representative of its attitude in that behalf are

Watson Brothers Transportation Company, Inc. v. United States (D.C.Neb. 1945) 59 F.Supp. 762; Andrews Van Lines, Inc., et al. v. United States, et al. (D.C.Neb.1965) 240 F.Supp. 763 (affirmed, per curiam, 382 U.S. 67, 86 S.Ct. 234, 15 L.Ed.2d 144); and Watkins Motor Lines, Inc. v. United States (D.C.Neb.1965) 243 F.Supp. 436. In thus citing three of its own earlier opinions, this court, without purposeless repetition by quotation therefrom, now makes reference to, and incorporates herein, the discussions in those several rulings having to do with the measure of the court's authority in cases of this character, and the citations of reported judicial opinions supporting the conclusions uniformly advanced in those cited rulings by this court.

Attention is drawn to the identity of the two plaintiffs in Andrews Van Lines, Inc., et al. v. United States et al. (D.C. Neb.) 240 F.Supp. 763, respectively, with the present plaintiff and the former intervening plaintiff herein, Security Van Lines, Inc., and to the similarity of the authority whose vindication was unsuccessfully sought in that proceeding, though, in that instance, on the basis of a claim under the "Grandfather provisions of the Interstate Commerce Act." See also Mollerup Van Lines, Inc., Alaska Grandfather Application (1962) 95 M. C.C. 338. The present proceeding is being resolved in this court upon the issues tendered in the complaint herein, and not otherwise.

In the hearing de novo at Seattle, Washington, supra, and in like manner as sundry other applicants for authority, the plaintiff, through Clayton L. Andrews, the Secretary-Treasurer and Operations Manager of Andrews Van Lines, Inc., presented oral testimony and documentary exhibits before the Commission's examiner, designed as evidence supportive of the plaintiff's application. That evidence disclosed that Albert Roy Andrews, the father of Clayton L. Andrews, entered into the business of transporting household furniture by motor vehicle, under the name of Andrews Van Lines in 1920, with his principal place of business at Norfolk, Nebraska, and also disclosed the succession thereafter to that business of the plaintiff corporation; its possession in succession to Albert Roy Andrews of authority from and after March 2, 1955, under the identification MC–26825, to transport household goods by motor carrier over irregular routes between points in many (approximately thirty two in number) of the states in the continental United States, other than Alaska; the addition, pursuant to MC–26825, sub. 3, dated March 15, 1967, to the points theretofore included, of routes "between points in Montana, on the one hand, and, on the other, points in Montana, Idaho, North Dakota, Oregon, South Dakota, Utah and Wyoming," and "between points in Montana, on the one hand, and, on the other, points in Washington." It disclosed also its possession, again through succession to Albert Roy Andrews, under MC 26825, sub. 4 TA,[7] under date of January 8, 1959 of temporary authority, for one hundred eighty days from January 8, 1959, for the carriage of household goods, as defined by the Commission, over irregular routes, "between points in Alaska, on the one hand, and, on the other, those points in the continental United States, which are

---

7. What is here said concerning the temporary authority granted January 8, 1959, is advanced without a strictly satisfactory showing. The Order, itself, granting such authority appears to the writer of this memorandum not to be presented as an exhibit. The present reflection of the authority granted is gathered from an exhibit in the Commissioner's hearing which is a copy of an "exhibit of the order." And even that exhibit does not contain the conditions shortly hereinafter copied. They are quoted from their repetition in the Supplemental Order of the Commission, under date of March 22, 1960, see immediately hereafter. In its context, it seems prudent to rely to this extent on that Supplemental Order, and the court makes no point of its inability to locate the "face of the order of January 8, 1959." (See allusion to it in Exhibit X-50, received in the Commissioner's hearing.)

presently" (i. e., as of the date of the temporary authority) "authorized to be served in applicant's certificate No. MC–26825 and subs. thereto, insofar as such certificates authorize the transportation of household goods." That temporary authority was subject to certain conditions, among which was the following:

*"Subject to the further conditions that unless otherwise provided in the appendix, (1) the service herein authorized shall be limited to the handling of the described traffic from and to the specific points or territories set forth in the appendix, and (2) no operating right separately described in the appendix may be combined with any other operating right therein described, or with any other temporary or permanent authority now held by, or hereafter issued to, applicant or any other carrier for the purpose of performing service from or to points within the specific authority herein granted."*

The temporary authority last mentioned was extended under section 9(b) of the Administrative Procedure Act, pending final determination of applicant's corresponding permanent authority application No. MC–26825 (sub. No. 5), i. e., the proceeding as it was then pending before the Commission out of which this action, in behalf of the plaintiff, later arose. And, as a further exhibit to Mr. Andrews' testimony before the Commissioner, supra, (Exhibit X–50), it was shown that, by order of the Commission's Temporary Authorities Board under date of March 22, 1960, in response to a petition by plaintiff to that end, it was further ordered by the Commission that, (a) Rule 1.225(d) of the Commission's General Rules of Practice was waived, and the petition just mentioned was filed; (b) the order of January 8, 1959, supra, was modified by deleting from its face the restrictive language in the grant of temporary authority last above quoted, and otherwise directing that the order of January 8, 1959 should remain in full force and effect. And it is shown that, as of May 16, 1963, the plaintiff corpora-

tion was, by the Alaska Public Service Commission, authorized to operate motor vehicles as a common carrier over the highways of the state of Alaska in interstate or foreign commerce, but only, *to the extent authorized by the Interstate Commerce Commission in Docket No. 26825 and subs. thereto,* emphasis added. That authority did not itself enlarge the transportation permits granted to the plaintiff. It granted a right to use the highway in the exercise of transportation rights otherwise authorized.

The oral testimony of Clayton L. Andrews covers sixty five typewritten pages of the record (which count includes a page numbered 600 A). And it is accompanied by many pages of exhibits tendered in support of plaintiff's application to the Commission for authority. That transcript of testimony and those exhibits have been examined by each of the members of the court. But they consider that any copying from, or even the exhastive reflection of, the testimony of the witness or the content of the exhibits just alluded to, would unreasonably expand the length of this memorandum. The evidence thus advanced affords an outline of the activities in the enterprise of household goods moving by motor carrier, first of Albert Roy Andrews, of Norfolk, Nebraska, as an individual doing business under the trade name of Andrews Van Lines, with headquarters and related warehousing facilities at Norfolk, Nebraska, commencing at an unidentified date in 1920, and, since its incorporation, by the plaintiff, Andrews Van Lines, Inc., a so-called "Andrews family corporation." That incorporation was said by Clayton L. Andrews to have occurred "approximately three years ago." And, since he made that estimate on May 21, 1964, the court considers the corporate existence and operation probably to have been effective since about January 1, 1961. Saying which, it offers the date merely as an estimate approximately substantiated. The testimony of the witness tends reasonably to support the financial ability of the plaintiff to engage in the transportation for

which it seeks authority, an ability which the court understands the Commission, in its Report served April 29, 1965, to grant that the plaintiff (in common with the other "applicants") possesses. Respecting equipment, an exhibit identified by the witness discloses plaintiff's *possession* of some twenty tractors of a variety of makes, of which "the majority" (not otherwise particularized) are leased, the others owned, by plaintiff; and of seventeen trailers (also of different makes), of which two are leased, and the others are owned, by it. The plaintiff does not own, and has never owned, any physical facilities in Alaska.

The evidence adduced before the Commission's Examiner shows that the "household goods" transported from points in the continental states of this nation other than Alaska to points in Alaska, and those of such goods transported from points in Alaska to points in others of the continental states, are and, during the interval under study were in much their larger part, in fact almost entirely, the property, or at least within the possession and use, of persons belonging to, or associated with, or employed by, the military establishment of the United States, or one or more of its component units. This is recognized generally in the record of the hearing before the Examiner, insofar as that record is brought to this court. But it is pointedly disclosed and discussed in the testimony of two of the witnesses at such hearing. Of those witnesses one is a lieutenant colonel in the United States Air Force, and, stationed in Washington, D. C., is the Chief of the Household Goods Traffic Division of the Defense Traffic Management Service. The presently significant function of that Service (characterized as D.T.M.S.) is "to furnish management guidance in connection with household goods movements throughout the United States (and) in various parts of the world purely from a traffic management and a service function." In the department of the testifying "chief," supra, the service "monitor(s) all household goods shipments for the Department of Defense and receive(s) reports concerning all phases of the traffic management, the allocation of traffic, distribution records and so forth." The other of those two witnesses is the Traffic Manager, in the G—4 Division of the United States Army headquarters, Alaska, Fort Richardson, Alaska, a civilian employee, who, under military direction and supervision, has responsibility for the actual movement, through transportation facilities, of household goods of the personnel of the military establishment within Alaska.

Those two witnesses severally testified at length touching the transportation practices in respect of household goods of military personnel which move by motor carrier from the continental states, other than Alaska, into Alaska, and also from Alaska into one of the other continental states. Their testimony, and the evidence generally adduced before the Commission's Examiner, were presented in view of the pendency before the Commission of the several applications for the grant of authority of the plaintiff especially, but also of the other applicants hereinbefore mentioned, and referred to in the complaint before this court, supra, on the one hand, and of the objections to such applications, particularly the objections of North American Van Lines, an intervening defendant, as well as of the other objectors, including, but not limited to, Alaska Orient Van Service and Smyth Overseas Van Lines, Inc. The objections of North American Van Lines, Inc. are to be regarded also in the light of the possession, by that objector or protestant, then and since October 1, 1963, of certificates authorizing its transportation of household goods as a common carrier by motor vehicle, apparently in both directions, between points in Alaska, on the one hand, and, on the other, points in the United States, except Alaska and Hawaii, 95 M.C.C. 338, an authority not possessed by the plain-

tiff, or by any of the others of the then applicants.[8]

The evidence before the Examiner showed that, during then recent years, the several applicants for authority had handled various volumes of traffic in household goods, including but not limited to "military traffic," moving from points in the continental United States, other than Alaska, to points in Alaska, as well as in the reverse direction, of which traffic the "bulk" consisted of household goods of military personnel; that with some exceptions, they had transported such northbound traffic by motor carrier from the shipments' points of origin northerly to Seattle, Washington, and at that point had surrendered the shipments to other carriers for transportation by water carrier to Alaskan ports, and thence by overland carriers to Alaskan destinations; that as to southbound shipments, they had received at Seattle for transportation by them southerly to their destinations, shipments originating in Alaskan points. Such operations would ordinarily involve an interlining of cargo at Seattle.

There is evidence, largely in the form of abstracts of shipments, and some explanatory oral testimony by Clayton L. Andrews, in behalf of plaintiff. These abstracts ostensibly have to do with shipments either originating in Alaska with destination in the continental United States other than Alaska, thus, southbound shipments on the one hand, or originating in one of the states of the continental United States other than Alaska, with destination in Alaska on the other hand, between the dates, June 20, 1957 and April 13, 1964, that is to say, through nearly seven years. The writer of this memorandum has undertaken to examine them, and to count the numbers of those that originated in Alaska. Subject to the acknowledged possibility of errors in the count, the abstracts appear to identify in all four hundred eighty-one shipments, of which only thirty-four originated in the continental United States other than Alaska, and four hundred forty-seven originated in Alaska. Of those shipments, as the court understands the testimony of Clayton L. Andrews, some sixty-nine were made with the plaintiff or Albert Roy Andrews as the operating carrier throughout the shipment. Of those sixty-nine items, forty-seven were by him said to have been made in leased equipment, and probably twenty-two[9] in owned equipment, all under the operation of Andrews Van Lines, Inc., or of Albert Roy Andrews, its individually operating predecessor. While the evidence shows some shipments of household goods out of Alaska into the continental United States, except Alaska, and one shipment in the reverse direction, all occurring after June, 1963 and until April, 1964, which, according to Clayton L. Andrews' testimony moved over the Alcan Highway, he appears to agree that after June 1963, all of it was made through the use of common carriers, and none of it was made in leased equipment after June 4, 1963. He is understood to testify that in the interval between June 14, 1963 and June 19, 1963, plaintiff made five small southbound shipments, which moved in its own stateside equipment.

The evidence discloses that, in the carriage of the shipments of household goods, the carriers either utilized the land-sea-land route already described between Seattle and the points of origin or destination, as the case may be, in Alaska, or proceeded entirely overland upon the so-called Alcan Highway be-

8. The court is naturally aware that in the proceeding then pending before the Commission, and under hearing before the Examiner, North American Van Lines, Inc., was also an applicant for operating authority between points within Alaska as modified and restricted by an amendment by it offered during the hearing before the Examiner. That application appears to have been denied, and to present no present problem.

9. The figure here given is somewhat uncertain and results from a count by the writer hereof, in which he has undertaken to resolve some doubts respecting the meaning of certain arbitrary symbols favorably to plaintiff.

tween the Mainland of the United States, across Canada, and the destination or the origin, ás the case may be, in Alaska. In actual operation, much the larger percentage, especially of that traffic associated with the military establishment was transported by way of the land-sea-land route, the rest along the Alcan Highway.

The Alcan Highway is a notably difficult road for travel and use. Many things unite in producing that result. Among them, as the evidence indicates, are the extremely cold weather during much of the year, accompanied by heavy snow and ice, attributable in part to the latitude of the terrain traversed by the Highway, and the rough surface of the road itself, and its susceptibility to physical deterioration, all of which involve enlarged intervals for carriage, hazards both to a transporting vehicle and to its cargo, and consequent expense and high operating overhead. Suggestive of the thought just mentioned is testimony by Clayton L. Andrews respecting the type and cost of the "rolling stock" requisite for operation over that route. It demands unusually heavy, rugged tractors, whose initial cost and maintenance expense are notably high, and cargo carrying trailers, in construction correspondingly heavy and equipped with facilities calculated to minimize the risk of injury to cargo from extremely cold weather.

The two witnesses above mentioned who are representatives of D.T.M.S. exhibited by their testimony a thorough understanding of the details of the actual operation of the enterprise of the movement of household goods of persons in or associated with the military establishment, and of such traffic generally, in the area presently involved, of the actual volume of the traffic under scrutiny, and of its reasonable prospective requirements. They testified at length upon those subjects as well as upon others. They explained that the agency, through its traffic offices, in an effort to promote both efficiency in handling, and the equitable allocation of, such carriage among the eligible operators, so managed the transportation of

the so-called military connected household goods, the dominant portion of traffic of that general character, that shipments of such goods were assigned among the motor carriers who had filed service tenders, and had been approved as eligible to share in the movement of such commodities. They further testified that at a given base, all approved motor carriers shared in such traffic on a rotation basis. They also testified to the large volume of such shipments, and to the comparative use in such movements of the land-sea-land route on the one hand, and on the other, of the all-highway service, within the certificated competence of the North American Van Lines, Inc., and that the land-sea-land method of carriage handled by far the greater part of the household goods traffic.

Moreover, the evidence, including that from the D.T.M.S. representatives, supra, explicitly supported the view that t the then available services, including the land-sea-land, and the all-highway routes, were adequately serving the requirements, especially of the military establishment and its personnel, as the prime patrons of such service, and its almost exclusive users; that such service was entirely satisfactory; that there was no plan or project purposefully or otherwise, to replace the land-sea-land traffic, or any part of it, by its diversion to all-highway transportation; and that there was not a foreseeable probability of the measurable enhancement of the volume of the traffic, or of the demand for materially enlarged facilities for such carriage, especially along the all-highway route.

Reference is made in the complaint, and has already herein been made, to the Report and recommended Order of the Commission's Examiner. Copies of those documents constitute a part of the complaint, and also of the record before the court of the submission, in this proceeding. Reference is now made to them without unnecessary or extended copying from them. However, as to a portion of the Examiner's Report, the re-

flection of his analysis of certain parts of the testimony before him is shortly hereinafter copied.

The court has also occasionally referred herein to the Report of the Commission, through its Division 1. It seems fitting that certain parts of that report be set out at length in this memorandum as reflective, at least in part, of the ruling which is here assailed. Therefore, in a footnote,[10] the court quotes from such report a substantial portion of the Com-

10. The following quotation is made from the prevailing opinion in the Commissioner's Report:

"Applicants are large and experienced carriers of household goods between all or extensive areas in the continental United States and the record establishes that they are all fit, financially and otherwise, to perform the operations proposed here. They have all handled varying volumes of traffic which moved between points in the continental United States within their presently certificated territories, on the one hand, and, on the other, points in Alaska, primarily for the Department of Defense. The bulk of this traffic is transported in a combination 'land-sea' movement. Thus, it is moved to or from west coast ports in applicants' motor vehicle equipment where it is transported between Alaska and the continental States by sea in either sea vans or containers.

"Motor carriers holding certificated authority to operate within Alaska handle traffic moving to or from the facilities of ocean and rail carriers in that State, either on an agency or an interline basis. While some of the applicants seek authority to operate between points in Alaska rather than depending upon Alaska based carriers so as to better control the traffic and to eliminate any future possibility of trouble in obtaining satisfactory service from the various Alaska carriers presently utilized, there is no evidence that the present arrangements are unsatisfactory or that there is any general or significant dissatisfaction with them.

"Andrews, United, Security, and Aero Mayflower have also handled a limited amount of traffic over the all-highway route (Alcan Highway) prior to the hearings but none of these carriers has offered a consistent service of this type for any significant period of time.

"The applications are supported by a number of shippers who have occasion to arrange for the transportation of their employee's household goods between points in Alaska and those in the continental United States and would like to have applicants' service available. However, none of these shippers have any objection to utilizing services presently available and collectively they ship only a small amount of traffic in comparison with that of the principal supporting shipper, the Department of Defense. The Defense Department ships an average of 12 million pounds of household goods each year between points in Alaska and those in the continental States, 95 percent of which moves partially by sea. It has generally received satisfactory service from the approved carriers that it has used, including applicants, and it will continue to utilize all approved carriers that may be authorized to perform the service required.

"Carriers who hold appropriate authority from this Commission and who meet certain standards laid down by the Defense Department are initially approved by it and may then obtain approval from the responsible transportation officers at the particular service bases they wish to serve. The traffic originating at a particular base is then tendered to the approved carriers on a rotation basis so as to equalize the tonnage each carrier handles. Defense Department traffic moving to or from Alaska is presently rotated among carriers who can serve that area without regard to whether the 'land-sea' or 'all-highway' mode of service is to be provided, and that Department has no present plans to rotate the traffic tendered on the basis of the mode of service to be used.

"The Alaska based carriers listed in footnote 3 all hold certificated authority for the transportation of household goods between various points in Alaska as a result of 'grandfather' proceedings and the record indicates that a number of them are presently utilized satisfactorily within Alaska, either as agents or interline carriers by carriers based in the continental United States, including applicants.

"North American is presently authorized to render service between points in the continental United States and those in Alaska as a result of its grandfather proceeding and has operated an all-highway service over the Alcan Highway since 1952 to points in that State. During 1963, it moved a total of 225 household goods shipments in this manner, 207 of which moved under government

mission's factual findings, through its Division 1, which follow its recollection of the substance of the pleadings before the Commission. And, after announcing the denial to those of the applicants which sought authority for the transpor-

tation of household goods within Alaska, of the authority thus prayed for,[11] the Commission, through its Division 1, in its report proceeded, in language set out in a footnote,[12] to its consideration, conclusion and ruling upon the several ap-

bills of lading. A cost analysis of the revenue and expenses connected with this traffic leads it to believe that any diversion thereof would result in delays at its Montana consolidation point and, if forced to operate its equipment half-loaded, it would not find it feasible to continue its operations over this route."

11. Which, as has already been observed, the plaintiff did not seek.

12. Here is the language announcing the ruling thus adverted to:

"All of the applicants also seek authority to operate between various points in the continental United States and those in Alaska. As noted, a radial grant of such authority would not authorize a land-sea service as the ocean line-haul transportation is an independent movement, but rather would authorize an all-motor highway movement, and it is the recommended denial of this portion of the authority sought to which the exceptions primarily lie.

"Initially, it is evident from the testimony of the representatives of the Department of Defense, the prime shipper here, as well as from the evidence presented by other shippers and carriers that while a substantial amount of household goods traffic moves between points in the continental United States and those in Alaska, the great bulk of this traffic presently moves by the land-sea route and will continue to move in this manner. However, it is equally apparent from the highway operations presently conducted by protestant North American in its pioneering all-highway service that such movements to and from Alaska are also feasible despite the obvious physical difficulties resulting from road and weather conditions which face any carrier. Moreover, a number of these applicants have conducted limited operations and in view of their established financial and physical ability, we have no reason to believe that any of them could not initiate service over the all-highway route if appropriate authority to do so were granted here.

"The real question presented then is whether there is any need for the proposed service. While we recognize that the quantum of evidence generally considered necessary to justify a grant of authority to transport household goods may be less exacting than might be necessary in other types of applications, there must be some evidence of need for the proposed service, and proof that it would be utilized if the application is granted.

"We are not convinced here, however, that a need has been shown for the proposed service. While, as indicated, the total tonnage of the traffic moving between Alaska and the continental States is significant, the bulk of this traffic moves under government bills of lading by the 'land-sea' mode and the applicants will be able to continue to handle this traffic to the extent and in the same manner as it is now handled by them. The operations applicants would conduct are designed then to partially replace their present participation in land-sea movements of this military traffic as the amount of commercial traffic available is clearly insufficient to warrant all-highway operations. The total amount of traffic to be transported over the all-highway route involved is small, however, both in actual tonnage and in comparison with the total tonnage moving to Alaska and there is no showing that the Department of Defense, which is the prime shipper, or any of the other supporting shippers are in any manner dissatisfied with the present over-all service which they will continue to use or that they desire such a change in the mode of transportation primarily utilized now. Protestant North American is patently able to handle any foreseeable traffic that may be tendered for transportation in all-highway movements. Moreover, inasmuch as a portion of that traffic is non-military it would be subject to diversion, and in view of the small amount of traffic moving even such a minor loss would substantially affect North American's operations.

"We have repeatedly stated that existing carriers normally should be accorded an opportunity to transport all of the traffic they can handle in an adequate and efficient manner without the added competition of a new operation. Consequently, we must con-

plication (including that of plaintiff) "to operate between various points in the continental United States" (other than Alaska) "and those in Alaska." And from considerations advanced in that discussion, it announced the denial of all such applications, including that of the plaintiff.

■ It is true, as plaintiff alleges and argues, that the Report of the Commission's Division 1 was not unanimous, but that one of its Commissioners filed a dissent from the denial of authority just reflected. In a single paragraph, the dissenting Commissioner appears to poise his disagreement upon the premise that the grant of the applications made before the Commission, or of some of them, would have enlarged the facilities for transportation potentially available to the shipping public, including the military personnel, to the possible advantage of such shippers. But that dissent reflects a minority view, even of the divisional membership. And in judicial deliverances it has to be remembered that a dissent in a multiple judge decision not infrequently adds emphasis to the view of the prevailing majority. For it serves at least to demonstrate that the consideration underlying the dissent was not overlooked or neglected, but rather duly regarded by the judges, and by the majority of them rejected. Finally, and in due season, supra, the Commission in general session entered an order denying the plaintiff's "petition * * * filed May 14, 1965, for deter-

mination and announcement that the proceedings involve issues of general transportation importance," for the reason that no such issues are involved.

In addition to the evidentiary portion of the record brought before this court during the hearing of this proceeding, supra, and with the understanding and expectation of the members of this court, there was also received and filed herein on June 10, 1966, thus shortly after the date of the hearing herein, as a "Supplementation, Part of Exhibit 1", an exhibit consisting of (a) a certified copy of a letter explanatory of the presentation of evidence from a representative or representatives of D.T.M.S., supra, and (b) a certified transcript of certain testimony (in addition to that already herein adverted to) presented on May 19, 1964 and on May 22, 1964, in the hearing at Seattle, Washington. That "Supplementation" constitutes a part of the record basic to the Report of the Examiner, and also to the later Report and Order of the Commission. Concerning that additional testimony, the Examiner in his Report identified the source of such evidence, and summarized its content. After examination and study of the filing herein as of June 10, 1966, supra, the members of the court are satisfied that, with reasonable verbal economy, the Examiner's Report, adequately and fairly discloses what by that filing was so presented in the way of evidence. The court, in the interest

clude not only that the present 'land-sea' service in which applicants' participate meets the shipper's needs for the bulk of their transportation but also that the all-highway service available from protestant North American involved in that portion of the applications under consideration here likewise meets any present or foreseeable needs for the movement of traffic in that manner. The applications must, therefore, be denied. In reaching this conclusion, we recognize that that protestant alone holds specialized authority to provide an all-highway service on household goods, but, in the circumstances here,

where the present service is clearly satisfactory and the foreseeable amount of traffic moving by the all-highway route is hardly sufficient to assure the viability of one carrier's service, we are of the opinion that authorization of other competing services at this time is not warranted.

"We find that applicants have failed to establish that the present and future public convenience and necessity require the proposed operations and that the applications should be denied.

"An appropriate order will be entered."

of brevity, therefore, sets out its analysis by the Examiner, as follows:

"As stated above, certain additional testimony was introduced by applicants United Van Lines and Aero Mayflower Transit. United introduced testimony by a manufacturer of telephones, telephone switchboards and power supply units for electronic installations with plants at Galion and Kenton, Ohio, and by its agents at Mansfield, Ohio, San Francisco and South San Francisco, Calif., Boise, Ida., Great Falls, Mont., Portland, Oreg., and Seattle, Wash. Aero Mayflower Transit presented testimony through representatives of a university at Anchorage, Alaska, two oil companies at Los Angeles, Calif., one oil Company at Tulsa, Okla., a manufacturer of accounting machines and computer systems with offices in all States, by its agents at Sacramento, Calif., Dallas, Beaumont, Port Arthur, Orange, Tex., Lake Charles, La., and Great Falls, Mont., and entered into stipulations with respect to its agents at Tacoma, Wash., and Davenport, Iowa.

"The manufacturer with plants at Galion and Kenton made one shipment of its products by van to Alaska in December, 1963, but as of the time of hearing was not advised as to the likelihood of any further shipments in the future. It also arranged for the movement of the household goods of certain personnel to Alaska during 1963, but as to the present time does not have employees in Alaska or have need therefor. The university at Anchorage was opened for classes in 1960 and annually since that time has arranged for the moving of household goods shipments of teachers and administrative personnel from the South-48 to Anchorage, about 5 such shipments having been arranged in 1963. Availability of reliable and adequate service in the future is desired. The three oil companies apparently have arranged shipments of household goods to Alaska for a total of 30 to 35 resident employees in the past few years, some of which have been handled by applicant Aero Mayflower and some by other carriers. All shipments in the past have been handled in a satisfactory manner, and the oil companies apparently expect to allocate their future shipments to and from Alaska among any reputable carriers having authority to perform the service. The manufacturer of accounting machines and computer systems apparently in the past year or two shipped one computer system to Anchorage and arranged for the moving of the household goods of three employees, but the witness was not informed as to the manner in which the shipments were transported.

"The several agents support the applications of their principals, United and Aero Mayflower, with the view that the proposed all-highway van service would be an additional sales tool in their development of household goods traffic, particularly from national accounts. They desire availability of all-highway van service by their principal in order to avoid the necessity for surrender of traffic requiring such service to a carrier competitive with their principal. None of the agents, however, is shown to have had occasion to book an appreciable quantity of household goods traffic for movement to Alaska in all-highway service."

This court must—and does—approach its determination touching the plaintiff's contention of the invalidity of the Commission's findings and orders in the light of the limitations upon the scope of this court's authority in litigation of the present character. Those limitations, and the rules arising from them, have already been briefly recalled. They will not now be restated, but are being observed and respected.

The court is persuaded that plaintiff's specifications of invalidity in

the Commission's orders, as asserted in paragraph numbered 10 of its complaint, supra, are not, in any respect or particular, well taken. Such orders involve not any oversight, but rather a resolute observance of the National Transportation Policy, as reflected in Title 49 U.S.C., preceding section 301, particularly in the definition of such policy by the Transportation Act of 1940, 54 Statutes at Large 898, and notably, Section 1 of Title 1 of such Act, see 54 Stat., p. 899. Nor is the court able to perceive in such orders any disregard by the Commission, or by the Examiner, in its behalf, of its powers and duties as defined in Title 49 U.S.C. § 304. And in considering whether to grant the plaintiff's application for the authority required under Title 49 U.S.C., § 306, in the way of a Certificate of Public Convenience and Necessity, the Commission appears faithfully to have observed the requirements of Title 49 U.S.C. § 307(a), which provides, so far as is here material, that:

" * * * a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, *and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future convenience and necessity; otherwise such application shall be denied.*" (emphasis added)

It is to be noted from the immediately foregoing quotation that the two conditions statutorily prescribed for the grant of a certificate are by the Statute set out in the conjunctive. For such a grant, both of those conditions in their entirety must be "found." And, for such a finding, both must objectively coexist. "Otherwise, such application shall be denied." Upon the record before it, the

Commission found and declared the absence, either in current being or in future existence, of the requirement for the convenience, and of the necessity, for the service applied for. Such a finding, by the language of the concluding clause of the statutory quotation, supra, required the denial of the plaintiff's application.

Moreover, plaintiff's specifications, supra, in support of its charge against the Commission's findings of arbitrariness, caprice, unreasonableness, and abuse of administrative discretion, as set out in paragraph 11 of the complaint before this court, are by this court, considered to be without adequate support in the record.

The Commission's negative finding touching the showing of public convenience and necessity is not (as plaintiff asserts) an "assumption." It is rather a considered finding based upon the record before the fact finding body. Nor is it "illogical," "unwarranted" or "unsupported." It rests in large measure upon direct testimony by witnesses competent to speak upon the question, whose employment is directly involved with the traffic under scrutiny, and who speak from the shippers' viewpoint. And it is not without support in the comparatively slender affirmative evidence upon the point, in behalf of plaintiff—and, so far as the record before this court discloses, of its fellow applicants—calculated to sustain a finding of present or future public convenience and necessity for the service in question. (see Reports of the Examiner and of the Commission's Division 1) And what matters in that relationship is the public convenience and necessity for such service, not the economic advantage which may accrue to the authority seeking carrier from the availability to it of the traffic to which the service is oriented.

The court is not persuaded that the Commission, or its Division 1, or its

Examiner, failed properly to appraise or evaluate the evidence of record in the light of the standards arising out of Title 49 U.S.C. §§ 306 and 307. The record before this court fairly indicates the awareness of such evidence by the Commission and the Examiner, and their objective appraisal of that evidence, and of its significance to the certificating agency, in the light of that agency's official duty and function, insofar as such duty and function are declared or disclosed in the two sections last cited.

 Nor does the court accept the plaintiff's argumentative pleading that the Commission's orders are based on an "interpretation of the facts which is general, conclusionary, and not specific, and is unwarranted, ambiguous and not based on the record and the need for services shown therein." The orders and their foundational findings appear to the court to be clear and direct, and to rest upon the record. Likewise, it is considered that the Commission's conclusion that the existing service is adequate for the shippers' needs is abundantly supported by the evidence. And it is not vulnerable because of the possession by some applicants, including the plaintiff, of temporary authority. After all, the Commission was made abundantly aware of the existence and limitations of such temporary authority. And the consequences to be attributed to its existence, and to its temporary character, were factors that were peculiarly appropriate for the Commission's evaluation. There is every indication that the Commissioners, and their Examiner, understandingly administered that function.

Contrary to the complaint's assertion, the orders assailed do not appear either necessarily operative, or reasonably calculated, to deprive shippers of the range of services they have heretofore enjoyed, or for which they have present or future need. And a careful study of the Report of the Examiner, and the Report and Order of the Commission, through its Division 1, discloses the want of any purpose on the Commission's part, either deliberately or by indirection, to effect such a deprivation.

Concerning the plaintiff's contention that the Commission's Order, in practical operation, will result in the monopolization of the traffic under consideration by the intervening defendant, North American Van Lines, Inc., the court, without repetition, now alludes to the discussion of that subject as quoted herein, in footnotes numbered 10 (especially its concluding paragraph) and 12, supra. It is believed by this court that the Commission's position thus announced and explained, both is abundantly supported by the evidence before that body, so far as it has been brought to this court, and constitutes a fair, just and licit course on the Commission's part in the exercise of its authority in respect of transportation. In the court's view, the plaintiff has not adequately supported its charge on that score against the Commission.

There appears to the court to be no virtue in the plaintiff's contention that in its conclusion, the Commission failed to give proper effect or weight to an asserted rule set forth in United Moving and Storage, Inc., Extension, 32 M.C.C. 359, that the quantum of proof in household goods carrier's case is substantially less than in cases involving other types of freight. Putting aside as not presently necessary for decision a question whether, or how far, the position thus alluded to has been modified or minimized by later rulings, it is here observed that, even as advanced by the plaintiff, the rule on which it relies requires the showing, in support of an application for carrying rights, of the objective existence of public convenience and necessity therefor. The Commission was and is familiar with its rule. And it is also the agency whereby the credibility and probative weight of testimony upon the issue are to be measured under each record before it. The court finds no indication that the Commission dis-

regarded the cited rule, after itself making express reference to it.

Reverting, finally, to the standards whereby the authority of this court in cases of the present character must be administered, supra, the court is persuaded that, upon the record before it, the orders of the Commission, now challenged, should not be vacated, or otherwise disturbed. It appears to the judges of this court that there is in the record before it, and was in the record before the Commission, a rational evidentiary basis for its conclusions and its administrative action. Its findings of fact appear adequately to respond to substantial pertinent and competent evidence before it, and its deductions and conclusions from those facts are maturely considered and rational. The making of such findings, deductions and conclusions is within its statutory competence, indeed, are an important part of its duty. Without according to it any arbitrary authority, the court has to, and does, recognize the legislative commitment to the Commission both of those "fact finding" and "evidence weighing" functions, and of responsibility, within recognized limitations, for the administration of the "National Transportation Policy" already adverted to. The judges presently acting believe that the record before them discloses no misuse of the authority just mentioned.

Without needless discussion, it is also concluded that the plaintiff has failed to sustain the very considerable burden of proof, by the law, supra, imposed upon it in cases of this character. Upon the record before it, the court finds against the plaintiff and denies in its entirety the relief which it seeks in this action.

An order and judgment is therefore made and given, and is being filed, concurrently herewith, denying the relief prayed for in the complaint, vacating the Temporary Restraining and Suspension Order heretofore granted herein, and dismissing the complaint and this action. And the costs of this action are being assessed against the plaintiff.